LPER CURIAM. *
This disciplinary matter stems from eleven counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Jay J. Szuba, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

Patt Matter

In March 1997, Robert Patt retained respondent to pursue a pending civil suit against Mr. Patt’s former employer for unpaid sales commission funds. Respondent agreed to undertake the representation, because the original attorney handling the case for Mr. Patt was moving out of town. However, respondent did not enter into a written contract with the *42 client, nor did he file a motion to substitute himself as counsel of record in the case.
Thereafter, respondent neglected the legal matter in general, as well as failed to communicate with Mr. Patt regarding the status of the case, despite Mr. Patt’s numerous efforts to obtain information. In April 1998, after several months of attempting to contact respondent, Mr. Patt requested respondent return his file. Respondent did not return the file until February 1999, over ten months after it was | ¡.requested. At that time, Mr. Patt learned respondent had failed to take any action in the matter.

Baton Rouge Rifle and Pistol Club Matter

Respondent filed an appeal on behalf of the Baton Rouge Rifle and Pistol Club (“Club”). Respondent failed to file a brief timely, and the court of appeal dismissed the appeal on February 18, 2000. Upon discovering that the appeal was dismissed, respondent allegedly told the Club that the appeal remained viable. However, the Club discharged respondent and requested that he return its files. Respondent did not return the files until after the Club filed a disciplinary complaint with the ODC, and even at that time, some of the files were missing.

Feinswog Matter

In March 1996, Harold Feinswog retained respondent to handle a pending divorce proceeding and community property disposition. At the time, Mr. Feinswog gave respondent two checks totaling $2,000 as a retainer. After being retained, respondent had several meetings with both his client and opposing counsel and appeared in court on behalf of his client.
Respondent was ultimately successful in obtaining a judgement of divorce for Mr. Feinswog, but did not complete the community property settlement as directed. Thereafter, respondent failed to communicate with Mr. Feinswog. After several unsuccessful attempts to reach respondent, Mr. Feinswog sent respondent a certified letter, asking that respondent contact him immediately regarding the status of his case. Respondent refused delivery of the letter. When Mr. Feinswog later appeared |,<¡at respondent’s office, respondent advised him that he was moving his law office and provided a false forwarding address.
In October 1998, Mr. Feinswog retained new counsel, Steve Benton, to take over the representation. Mr. Benton took numerous efforts to recover Mr. Feinswog’s file from respondent. Respondent ultimately produced some of the file pursuant to court order, but did not produce the entire file. Additionally, respondent only accounted for $840 of the $2,000 fee he received from Mr. Feinswog.

Thomas Matter

Damon Thomas retained respondent in 1988 to pursue a personal injury claim against Mr. Thomas’ former employer. Respondent filed suit on Mr. Thomas’ behalf in federal court. The defendant filed a motion for summary judgment, on the ground that Mr. Thomas was its statutory employee. Respondent did not oppose the motion for summary judgment, contending he feared sanctions of under Rule 11 of the Federal Rules of Civil Procedure. As a result, Mr. Thomas’ action was dismissed.
Subsequently, Mr. Thomas filed a legal malpractice action against respondent. The trial judge in the malpractice action rendered summary judgment in favor of respondent. However, respondent ultimately settled with Mr. Thomas for $175,000.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed eleven counts of formal charges against respon *43 dent based on his conduct in the Patt, Club, Feinswog and Thomas matters. The charges asserted violations of the following provisions of the Rules of | ¿Professional Conduct: Rules 1.3 (lack of diligence), 1.4 (failure to communicate) and 1.16(d) (failure to return client property at termination of representation).
Respondent filed an answer, denying any misconduct. Additionally, respondent raised mitigating factors, including personal problems.

Formal Hearing

A formal hearing was conducted, at which time respondent represented himself in proper person. The ODC presented the testimony of each of respondent’s former clients, as well as their respective attorneys.
Respondent testified on his own behalf. Respondent did not dispute the allegations of misconduct. He acknowledged he could have handled his clients’ matters more professionally and kept them informed. However, he attributed his neglect and failure to communicate to his personal problems stemming from the illnesses and deaths of three family members. Specifically, respondent maintained his mother was diagnosed with Lou Gehrig’s disease in 1996, which left her bedridden. Respondent asserted he essentially closed his law practice so he could provide full-time care to her, until her death in 1998. In addition, he alleged he cared for his cousin, who resided in New York, who was diagnosed with pancreatic cancer in 1997 and died in 1999. Last, respondent claimed his uncle in Arizona died in early 1999 from a brain injury stemming from a medical malpractice incident.
Respondent testified that he has essentially quit practicing law, although he occasionally provides research and writing services to other attorneys. He maintained that he has taken responsibility for his actions. While he recognized he may never practice law again, he stated that he nevertheless did not want to lose his license.
| BRecommendation of the Hearing Committee
The committee determined there was clear and convincing evidence in the Patt, Club and the Feinswog matters that respondent neglected his clients’ cases, failed to communicate with his clients and failed to return his clients’ property. With regard to the Club matter, the court found there was insufficient evidence that respondent intentionally misrepresented facts to the Club regarding the filing of their appeal, noting that at the time respondent made the statement that the appeal was viable, he did not know the appeal had been dismissed based on his failure to file the appellate brief.
As to the Feinswog matter, the committee agreed that respondent failed to account, but found that he did not fail to refund the unearned attorney’s fee because he earned the entire $2,000 retained. Finally, the committee found insufficient evidence to support all of the charges subject of the Thomas matter. Specifically, the committee recognized that there was no indication respondent neglected his client’s case based on the failure to file an opposition to the defendant’s motion for summary judgment. It relied on the fact that the trial judge granted summary judgment in favor of respondent in the legal malpractice action, which the committee concluded basically vindicated respondent’s failure to oppose the motion for summary judgment. It further concluded there was no evidence of respondent’s failure to communicate with his client. The committee noted that respondent testified he communicated with Mt. Thomas verbal *44 ly and by correspondence. The committee found no merit in Mr. Thomas’ allegation that respondent failed to disclose settlement offers made to him in the federal proceeding. In support, it relied on Mr. Thomas’ testimony that he knew the defendant made an offer in 1989 and respondent told him that he was trying to settle the case. Further, the committee found credible respondent’s testimony that, | fiWhen the motion for summary judgment was filed in the civil matter, he advised his client that they had a problem based on his appreciation of the facts and the law.
Thus, the committee concluded respondent violated Rules 1.3 (lack of diligence), 1.4 (failure to communicate) and 1.16(d) (failure to return client property at termination of representation) of the Rules of Professional Conduct. Citing Standards 4.42 and 7.2 of ABA’s Standards for Imposing Lawyer Sanctions,[1] the committee determined the baseline sanction for this misconduct is suspension.
As aggravating factors, the committee recognized respondent’s prior disciplinary infraetions,[2] pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency, vulnerability of victim and substantial experience in the practice of law (admitted in 1983). In mitigation, it recognized respondent’s personal or emotional problems stemming from the illnesses and deaths of respondent’s mother, cousin and uncle, as well as his unsuccessful business ventures in 1996 and 1997.
Based on these factors, the committee recommended that respondent be suspended from the practice of law for a period of two years followed by a one year period of supervised probation.

_J¿Recommendation of the Disciplinary Board

The disciplinary board found no manifest error in the committee’s findings of fact, including its finding that there was insufficient evidence to support the charges in the Thomas matter.[3] Relying *45 on the ABA Standards and aggravating and mitigating factors cited by the committee, as well as jurisprudence from this court, the board recommended that respondent be suspended from the practice of law for a period two years, subject to a one year period of supervised probation to monitor respondent’s law office management and practice procedures. One board member filed a concurrence maintaining that, but for respondent’s failure to participate in the disciplinary process, a one year suspension might be a more appropriate sanction.
Neither respondent nor the ODC filed an objection in this court to the hearing committee’s recommendation.
DISCUSSION
The record supports the finding that respondent knowingly and negligently neglected three clients’ legal matters, failed to communicate with those clients, failed to return their property and failed to provide an accounting to one client. Therefore, the sole issue presented for our consideration is the appropriate sanction for respondent’s misconduct.
In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, | ^preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s negligent actions potentially jeopardized his clients’ legal matters and delayed resolution of their cases. This court has generally imposed substantial suspensions for similar misconduct involving multiple clients. See In re: Boudreau, 00-3158 (La.1/5/01), 776 So.2d 428 (three year suspension imposed on an attorney who neglected three clients’ matters, failed to communicate with the clients, failed to account for and return unearned fees, failed to repay a student loan, withheld client property and failed to cooperate with ODC) and In re: Powers, 99-2069 (La.9/24/99), 744 So.2d 1275 (three year suspension imposed on attorney with a prior disciplinary record for similar misconduct who neglected three clients’ legal matters, failed to communicate with the clients, failed to account for and return unearned fees and failed to cooperate with the ODC). However, we recognize the presence of several mitigating factors in this case, including respondent’s significant personal problems during the time period in question.
Accordingly, we will accept the disciplinary board’s recommendation and suspend respondent from the practice of law for a period of two years, followed by a one year period of supervised probation.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Jay J. Szuba be | gsuspended from the practice of law for a period of two years, followed by a one year period of supervised probation. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.

. Standard 4.42 provides "[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.” Standard 7.2 provides "[s]us-pension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.”

. Respondent’s prior disciplinary offenses consist of an admonition (97 ADB 003) imposed on February 11, 1998 for violating Rules 1.4 (failure to communicate with a client) and 8.4(g) (failure to cooperate with the ODC). Another admonition (96 ADB 040) was imposed on August 5, 1996 stemming from respondent's violation of Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

.The board noted the circumstances surrounding respondent's handling of Mr. Thomas’ lawsuit was questionable, because it was undisputed that respondent did not oppose the defendant’s motion for summary judgment in the underlying suit, and did not communicate settlement offers in that suit to Mr. Thomas. However, the board deferred to the committee’s ultimate finding that there was insufficient evidence that respondent neglected the Thomas matter. In doing so, it relied on Mr. Thomas’ testimony that respondent did communicate verbally with respondent regarding the lawsuit, the law dealing with statutory employment was in flux at the time Mr. Thomas’ suit was pending against his employer and respondent testified that he feared Rule 11 sanctions from the presiding federal judge in the civil suit, had he opposed the motion.