*173 ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This attorney disciplinary proceeding involves one count of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Alfred L. Hansen, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
On December 6, 1997, Arnaldo and Olga Cruz hired respondent to prepare and file visa petitions for Ms. Cruz and her two minor children.[1] The Cruzes advised respondent the visa petitions had to be filed by January 1998. Respondent agreed to handle the matter for a fee of $1,500 plus costs. The Cruzes made a partial payment toward the fee on that same day.
Three days later, Mr. Cruz returned to respondent’s office with three $80 money orders, which were to be used to pay the Immigration and Naturalization Service (“INS”) fees for the three visa petitions. The payee on each money order was left blank by Mr. Cruz.
Thereafter, respondent failed to file the visa petitions by the January 1998 deadline. However, over the course of the next three years, he advised the Cruzes that he had filed the visa petitions.
I gin September 2000, respondent made the three $80 money orders payable to himself and deposited them into his operating account. Approximately four months later, in late January 2001, respondent purchased three new money orders, in the amount of $110 each, and made these money orders payable to the INS. A few days later, respondent mailed the three visa petitions along with the three $110 money orders to the INS for filing.
Thereafter, respondent sent the Cruzes copies of the visa petitions along with copies of letters he had written to the INS dated December 30, 1997; July 1, 1999; August 29, 2000; and January 30, 2001. The parties stipulated that none of these letters were actually sent to the INS.[2]
In August 2001, the Cruzes filed a complaint against respondent with the ODC. *174 The complaint alleged that respondent did not return their phone calls, that he altered the three $80 money orders to be payable to himself and deposited them into his account, and that he never filed the three visa petitions, even though he gave them copies of letters he had sent to the INS. The Cruzes also claimed that respondent’s misconduct harmed them not only financially but caused “irreversible damage” by delaying the visa petitions for three years.
Respondent gave a sworn statement on December 11, 2001 during which he admitted to intentionally deceiving the Cruzes by sending them copies of letters he had never sent to the INS and “doctoring” copies of the three $80 money orders to make the Cruzes believe he had made them payable to the INS. Respondent also admitted to delaying the filing of the visa petitions, for which he had no excuse. | ¡¡Furthermore, respondent stated that he deposited the $80 money orders into his operating account because he wanted to buy new money orders in the amount of $110 (the new INS fee for the visa petitions).
Respondent recognized the harm his misconduct had caused Ms. Cruz’s children in delaying their entry into the country. Although he claimed that Ms. Cruz herself was not harmed by his conduct, he admitted that the lack of harm to Ms. Cruz did not excuse his dilatory behavior, and he apologized for the “anguish and frustration and ... angst” he caused them.
In 2002, respondent, paid $1,000 in restitution to the- Cruzes. He also settled a malpractice suit filed against him by the Cruzes.[3]
DISCIPLINARY PROCEEDINGS

Formal Charges

After an investigation, the ODC filed one count of formal charges against respondent, alleging his conduct violated the following Rules of Professional Conduct: Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing á client), 1.4 (failure to communicate with a client), 1.15 (safekeeping property of clients or third parties), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
|4In his answer, respondent generally accepted the factual allegations as written in the formal charges. However, he specifically denied commingling and converting funds by depositing the three $80 money orders into his operating account, stating that it was never his intention to convert the money. Furthermore, he stated that he did not recall agreeing to the Cruzes’ January 1998 deadline but instead agreed to file the visa petitions “within a reasonable time.”

Hearing Committee Recommendation

The hearing committee made a factual-finding that respondent agreed to the January 1998 deadline for filing the visa petitions. . It determined that respondent “lied to and intentionally misled and deceived his clients by falsely informing them that he had filed the visa petitions, and further deceived them by providing them with bogus documentation purporting to establish *175 that he had in fact timely filed the visa petitions on December 30, 1997.” It further determined that respondent continued this deception for more than three years.
With regard to the blank money orders provided by the Cruzes to respondent in 1997, the committee found respondent did not use these money orders for their intended purpose, but instead deposited them into his operating account. Because these money orders represented client funds under Rule 1.5(f)(4),[4] the committee determined respondent commingled the funds with his own and converted them to his own use. However, the committee recognized that respondent subsequently paid cash |sfor three new money orders in the amount of $110, which he made payable to the INS for the new visa petition fees.
Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged by the ODC. As mitigating factors, the committee recognized a timely good faith effort to make restitution or to rectify consequences of misconduct; imposition of other penalties or sanctions (malpractice settlement); mental disability;[5] remorse; absence of prior disciplinary record; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; and extensive church and community service work. The committee found no aggravating factors.
Considering the above circumstances, the committee recommended that respondent be suspended from the practice of law for three years, with all but one year and one day deferred, followed by two years of probation with conditions.
The ODC filed an objection to the hearing committee’s report.

Disciplinary Board Recommendation

The disciplinary board found that the majority of the hearing committee’s factual findings were not manifestly erroneous.[6] With regard to the hearing committee’s legal findings, the board agreed with the committee’s determination that respondent’s conduct violated Rules 1.1(a), 1.2(a), 1.3, 1.4, 1.15(a), and 8.4(a)(c)(d) of the Rules of Professional Conduct. However, the board disagreed with the | ficommittee’s finding that respondent violated Rules 1.15(b)[7] and 1.15(c).[8] The board deter *176 mined that Rule 1.15(b) was not applicable because respondent never received funds from a third party in which the Cruzes had an interest and Rule 1.15(c) was not applicable because there was no fee dispute.
The board found the respondent violated duties owed to his clients, the legal system, and the profession. It determined respondent acted intentionally, and his misconduct caused significant harm. In support,, it observed that the visa petitions for Ms. Cruz and her children were delayed more than three years, and as of the hearing date, the children were still living outside of the United States. The board determined the baseline sanction for respondent’s misconduct ranged from disbarment to a three-year suspension.
Unlike the committee, the board identified several aggravating factors: dishonest or selfish motive, vulnerability of victims, and substantial experience in the practice of law. As mitigating factors, .the board recognized remorse, absence of prior disciplinary record, full and free disclosure to disciplinary board or cooperative attitude toward proceedings, character or reputation, imposition of other penalties or 17sanctions, and personal or emotional problems.[9] The board also disagreed with the committee’s mitigating factor of timely good faith effort to make restitution or to rectify consequences of misconduct, because the record did not indicate whether the fee refund and malpractice settlement occurred before or after the filing of formal charges.
Considering all these factors, the board recommended that respondent be suspended from the practice of law for three years, with one year deferred.
Neither respondent nor the ODC' filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
*177 The record supports the hearing committee’s factual findings, as modified by the disciplinary board. Respondent unreasonably delayed his clients’ legal matter for an extended period of time and sought to conceal his inaction by submitting false or lsdeceptive documents to his clients. He further commingled client funds with his own funds and converted these funds to his own use for a significant period of time. Accordingly, the clear and convincing evidence in the record supports the conclusion that respondent violated Rules 1.1,1.2(a), 1.3, 1.4, 1.15(a), and 8.4(a)(c)(d).
 Having found evidence of professional misconduct, the next issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The sanction imposed in similar cases ranges from disbarment to lengthy suspensions. See, e.g., In re: Gines, 03-2827 (La.3/19/04), 869 So.2d 778 (lawyer disbarred for conduct involving, among other things, commingling funds, neglecting legal matters, failing to communicate with her clients, and engaging in deception); In re: LeBlanc, 98-0800 (La.5/29/98), 713 So.2d 449 (lawyer suspended for three years for engaging in deception and failing to communicate with his client, resulting in substantial harm); In re: Ellis, 98-0078 (La.5/1/98), 710 So.2d 794 (lawyer suspended for three years with one year and one day deferred for delaying a client’s legal matter and deceiving the client).
Several aggravating factors are present, the most significant of which is the harm caused by respondent to his vulnerable victims, who trusted him to expedite their legal matter. We also recognize several mitigating factors, including remorse, |9absence of prior disciplinary record, full and free disclosure to disciplinary board or cooperative attitude toward proceedings, good character or reputation, and personal or emotional problems.
Considering the gravity of respondent’s misconduct, we find the appropriate sanction is a three-year suspension from the practice of law. However, in light of the mitigating factors, we will defer one year of this suspension.[10]
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Alfred L. Hansen, Louisiana Bar Roll number 1937, be suspended from the practice of law for three years. It is further ordered that one year of the suspension shall be deferred. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, *178 with legal interest to commence thirty-days from the date of finality of this court’s judgment until paid.

. Ms. Cruz had entered the country illegally and, therefore, wished to obtain a visa as soon as possible. Her children were living in Honduras during this time, awaiting visas to legally enter the United States.

. The parties’ stipulation is somewhat confusing in this regard, as a review of the record reveals that the August 29, 2000 letter to the INS was mailed by certified mail and signed for by the INS on September 2, 2000. Furthermore, the January 30, 2001 letters (which are actually dated January 31, 2001) were mailed to the INS and contained the visa petitions actually filed. Presumably, the parties intended to stipulate that no letters had been sent to the INS prior to the January 1998 deadline, despite the fact that one letter was dated December 30, 1997.

. The amount of this settlement is unclear from the record. In his testimony at the formal hearing, respondent stated that he thought the malpractice claim had settled for $9,800. However, the Cruzes' attorney testified that he thought the claim was settled for $9,600.

. Rule 1.5(f)(4) provides:
When a client pays the lawyer an advance deposit to be used for costs and expenses, the funds remain the property of the client and must be placed in the lawyer's trust account. The lawyer may expend these funds as costs and expenses accrue, without further authorization from the client for each expenditure, but must render a periodic accounting for these funds as is reasonable under the circumstances.

. Respondent produced evidence indicating he had been diagnosed with atypical bipolar disorder. His psychiatrist indicated that persons suffering from such a condition could feel disorganized, overwhelmed, and unable to deal with the day-to-day problems of work.

. The board noted some minor factual errors in the hearing committee’s report, finding that the committee erred in determining the August 29, 2000 and January 31, 2001 letters were not mailed to the INS. The board found both were mailed. However, it agreed that the August 29, 2000 letter contained intentionally false information. Furthermore, the board noted respondent also sent the Cruzes another false letter dated January 18, 2001.

.At the time of this case, Rule 1.15(b) provided:
Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. For purposes of this rule, the third person's interest shall be one of which the lawyer has actual knowledge, and shall be limited to a statutory lien or privilege, a final judgment addressing the disposition of those funds or property, or a written agreement by the client or lawyer on behalf of the client guaranteeing pay *176 ment out of those funds or property. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

. At the time of this case, Rule 1.15(c) provided:
(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

. The board determined that the committee erred-in finding that respondent's mental disorder was a mitigating factor, finding this evidence instead established a mitigating factor of personal or emotional problems.

. The board recommended that we impose a condition whereby the deferred portion of the suspension would become executory in the event of future misconduct by respondent. Because the active portion of respondent’s suspension exceeds one year and will therefore require a formal application for reinstatement under Supreme Court Rule XIX, § 24, we decline to impose any conditions at this time. If and when respondent applies for reinstatement, the board may consider recommending appropriate conditions for reinstatement, including conditions for the triggering of the deferred portion of the suspension.