*1282 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Carvel A. Sims, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS
Counts I & II — The Southard Matter
In February 2005, Robert and Judy Southard hired respondent to represent them in a claim against their insurance company for business interruption due to fire damage. Respondent filed suit against the defendant insurance company on behalf of the Southards.
By order dated February 10, 2006, the trial court directed respondent to produce his clients for depositions and to submit outstanding discovery responses. Respondent failed to comply with the trial court’s order. Thereafter, the defendant filed several motions, including a motion for contempt, a motion in limine to exclude the testimony of the Southards’ expert witnesses due to respondent’s failure to timely submit the expert reports, and a motion to compel discovery. Respondent did not file oppositions to any of these motions. When the Southards requested information from respondent, he assured them everything was going well and there was no need to take depositions or provide expert witnesses.
|aThe trial court heard the motions on March 21, 2006. The trial court found that respondent acted in direct defiance of the February 10, 2006 order and, thus, granted the motion for contempt. As a sanction for the contempt finding, the trial court ruled that the Southards were precluded from presenting testimony at trial relative to their business interruption claim. The trial court also granted the motion in li-mine and prohibited the Southards from offering expert testimony at trial, finding that they failed to timely submit expert reports. Finally, the trial court ordered respondent to pay the defendant’s attorney’s fees and expenses.
On April 19, 2006, without the South-ards’ knowledge or consent, respondent filed a motion to dismiss the suit with prejudice. The trial court granted the motion on May 1, 2006. Respondent did not advise the Southards that he had their case dismissed.
In the meantime, respondent suggested to the Southards that the judge was showing favoritism to the opposing counsel and they needed to retain other counsel. Accordingly, the Southards consulted attorney Peter Dudley. Beginning on July 6, 2006, Mrs. Southard requested numerous times that respondent provide her with the file for the insurance case as well as the files for several other legal matters he was handling for them. Respondent provided her with one file on July 18, 2006 and informed her the rest would be ready on July 21, 2006. As of November 10, 2006, he had not yet provided the files.
When the Southards filed a disciplinary complaint against respondent, he did not respond to the ODC’s request for a response. This necessitated the issuance of a subpoena to take his sworn statement. Despite being personally served with the subpoena, respondent failed to appear.
*1283 laThe ODC alleges that respondent’s conduct violated Rules 1.2(a) (scope of the representation), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to make reasonable efforts to expedite litigation), 3.4(a) (unlawful obstruction of another party’s access to evidence), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count III — The Dean Morris Matter
Respondent represented Rose Mary Givens in the lawsuit entitled Ocwen Federal Bank v. Rose Mary Henderson Givens, which was apparently a proceeding to foreclose on Ms. Givens’ home. Ocwen Federal Bank (“Ocwen”) was represented by Charles Heck, Jr., an attorney with Dean Morris, LLP (“Dean Morris”).
Due to a clerical error, the plaintiffs request for writ of fieri facias contained an incorrect legal description. Thus, the plaintiff sought to rescind the sheriffs sale of the improperly described property; however, the trial court determined that the motions were improperly brought via summary process.
Consequently, in July 2003, respondent filed a petition for damages on behalf of Ms. Givens in the proceedings originally brought by Ocwen. Thereafter, respondent and Mr. Heck negotiated a settlement to resolve the pending litigation, consisting of the payment of $9,500 to Ms. Givens in exchange for her executing a settlement agreement and transferring certain property to Ocwen.
In November 2004, Mr. Heck forwarded the $9,500 settlement cheek to respondent along with the settlement agreement and instructions that the funds were |4to be held in trust until Ms. Givens executed the settlement agreement. In February 2005, respondent negotiated the settlement check, but Ms. Givens did not execute the settlement agreement.
In November 2005, Mr. Heck informed respondent that Dean Morris was no longer representing Ocwen in the matter. Because respondent never returned the executed settlement agreement, Mr. Heck also revoked the settlement offer and demanded respondent return the $9,500. Despite numerous requests by Mr. Heck to return the funds and respondent’s promise to do so, respondent did not return the funds to Dean Morris.
In April 2006, Mr. Heck, on behalf of Dean Morris, filed a petition to recover the funds and for damages against respondent. In his answer to the petition, respondent acknowledged that he was holding the $9,500 to fund the settlement of Ms. Givens’ claim despite being aware the settlement offer had been revoked. In October 2006, the trial court granted a motion for summary judgment against respondent in the amount of $9,500.
Mr. Heck filed a complaint against respondent with the ODC. In November 2006, respondent forwarded his trust account check in the amount of $9,500 to the ODC. He indicated in his response to the complaint that Ms. Givens initially did not want to sign the settlement agreement because Ocwen also wanted her estranged husband, who was not a party to the suit, to sign it, but that she had recently agreed to sign the settlement agreement.
The ODC alleges that respondent’s conduct violated Rules 1.3, 1.15(d)(e) (safekeeping property of clients or third persons), 3.2, 3.3(a)(1) (knowingly making a false statement of fact or law to a tribunal), 8.4(a), 8.4(c) (engaging in conduct | ¿involving dishonesty, fraud, deceit, or *1284 misrepresentation), and 8.4(d) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
The ODC filed formal charges against respondent on November 13, 2006. Respondent was served with the formal charges but failed to answer. Accordingly, by order of the hearing committee chair dated June 14, 2007, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). Before the hearing committee considered the matter, respondent requested an extension of time to answer the formal charges.[1] The committee chair recalled the deemed admitted order and granted respondent an extension of time until August 15, 2007 to answer the formal charges. Nonetheless, respondent did not file an answer to the formal charges. Accordingly, on December 19, 2007, the deemed admitted order was reinstated. No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the committee’s consideration.

Hearing Committee Report

After considering the ODC’s deemed admitted submission, the hearing committee determined that the formal charges are deemed admitted and proven by clear and convincing evidence. Thus, the committee found that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
| r,Turning to the issue of an appropriate sanction, the committee determined that respondent knowingly, if not intentionally, violated duties owed to his clients, the legal profession, and the legal system. He caused harm to the Southards by prohibiting them from proving the full extent of their losses and harmed Dean Morris by depriving it of its funds since February 2005. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the applicable baseline sanction is in the range of a suspension to disbarment.
Aggravating factors found by the committee are prior disciplinary offenses (a formal private reprimand in 1982), a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, substantial experience in the practice of law (admitted 1977), and indifference to making restitution. The committee found no mitigating factors present.[2]
The committee observed that this court has generally imposed moderate to lengthy suspensions for similar misconduct, citing In re: Whitehead, 01-3071 (La.4/12/02), 816 So.2d 284, and In re: Szuba, 01-1877 (La.10/5/01), 797 So.2d 41.[3] Nevertheless, *1285 considering the numerous aggravating factors present in this case, the committee recommended that respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
| tDisciplinary Board Recommendation
After reviewing this matter, the disciplinary board determined that the hearing committee’s findings do not appear to be manifestly erroneous and the record supports the deemed admitted allegations. The board also determined that the committee correctly applied the Rules of Professional Conduct.
Based on these findings, the board determined that respondent knowingly and, in some instances, intentionally violated duties owed to his clients, the legal profession, the public, and the legal system. After review of the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is suspension.
In aggravation, the board found a dishonest or selfish motive, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. However, the board found that the record does not support the aggravating factors of prior disciplinary offenses or a pattern of misconduct as found by the committee. The board reasoned that respondent’s 1982 private reprimand is too remote in time to constitute an aggravating factor, and he is only charged with two counts of misconduct, so there does not appear to be a pattern of misconduct. Like the committee, the board declined to recognize respondent’s medical condition as a mitigating factor, stating that it was not convinced his health problems prevented him from responding to the formal charges or making an appearance at the hearing.
Turning to the issue of an appropriate sanction, the board cited In re: LeBlanc, 97-1056 (La.9/19/97), 699 So.2d 378, and In re: Schnyder, 05-1463 (La.1/13/06), 918 So.2d 455. In LeBlanc, this court imposed an eighteen-month suspension upon an attorney who neglected a legal matter, resulting in the client’s claim being dismissed, and failed to inform the client of the dismissal. Mr. LeBlanc also failed to cooperate with the ODC in its investigation. In Schnyder, this court imposed a one year and one day suspension upon an attorney who neglected two legal matters and failed to cooperate with the ODC. In one matter, Mr. Schnyder settled his client’s claim without her knowledge or consent. The court also found that Mr. Schnyder’s conduct was due to negligence. The board found that respondent’s conduct is more egregious than that in LeBlanc because he actually filed the motion to dismiss his clients’ lawsuit without his clients’ knowledge or consent. The board also found that respondent’s conduct appears to be knowing and, in some instances, intentional as opposed to Mr. Schny-der’s negligent conduct. Furthermore, there are more aggravating factors present in the instant matter than there were in either LeBlanc or Schnyder. Therefore, the board concluded that respondent should receive a longer suspension than was imposed in those cases.
Accordingly, the board recommended that respondent be suspended from the practice of law for two years.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
*1286 DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has 19been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The record supports a finding that respondent neglected the Southards’ legal matter to such a degree that the trial court prohibited them from presenting testimony regarding their business interruption claim and prohibited them from offering expert testimony. Thereafter, respondent dismissed their case without their knowledge or consent and failed to inform them of this fact. When respondent suggested that they retain new counsel, he failed to provide them with their numerous flies despite Mrs. Southard’s repeated requests. Finally, when the Southards filed a disciplinary complaint against him, respondent failed to cooperate with the ODC in its investigation.
In the Dean Morris matter, respondent negotiated the settlement check but failed to have his client execute the settlement documents. In the meantime, Dean Morris’ representation of Ocwen was terminated. Because respondent failed to return the executed settlement documents before the termination of Dean Morris as Ocwen’s |inattorney, Mr. Heck revoked the settlement offer and requested the return of the $9,500. Respondent failed to do so, forcing Mr. Heck to file a lawsuit against him for the return of the funds. Only after the trial court granted summary judgment against him and Mr. Heck filed a disciplinary complaint against him did respondent return the money.[4]
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
From the record, it is clear that respondent acted knowingly and, in some instances, intentionally. He violated duties owed to his clients, the legal protes- *1287 sion, and the legal system. He caused actual harm to the Southards in that their claim was compromised, then dismissed altogether. He also caused harm to Dean Morris by depriving the firm of its funds for an extended period of time. The baseline sanction for respondent’s misconduct is a lengthy suspension.
The record supports the following aggravating factors: prior disciplinary offenses, multiple offenses, bad faith obstruction of the disciplinary proceeding by Inintentionally failing to comply with the rules or orders of the disciplinary agency, and substantial experience in the practice of law.
With respect to respondent’s medical condition, which he describes as “bleeders in my eyes” resulting in temporary blindness, we note that his medical records are not a part of the record despite ample opportunity given to him to introduce same into these proceedings. Accordingly, we agree with the committee and the board that the record does not support the mitigating factor of a physical disability.[5] Thus, the only mitigating factor present in this matter is the remoteness of respondent’s prior disciplinary offense, a 1982 private reprimand.
Given that respondent acted knowingly and, at some times, intentionally, and given the harm caused by his misconduct, we find a two-year suspension is appropriate under the prior jurisprudence. Accordingly, we will adopt the disciplinary board’s recommendation and suspend respondent from the practice of law for two years.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Carvel A. Sims, Louisiana Bar Roll number 12301, be and he hereby is suspended from the practice of law for two years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
TRAYLOR and KNOLL, JJ., would impose a harsher sentence.

. Respondent indicated he was temporarily blind in both eyes due to a medical condition and that his home had recently been destroyed by fire.

. The committee noted respondent's medical condition in his eyes, but declined to consider this as a mitigating factor for the rule violations.

. In Whitehead, this court imposed a one-year suspension upon an attorney who neglected three legal matters, failed to communicate with three clients, failed to refund unearned fees to at least one client, and failed to cooperate with the ODC in two investigations. In Szuba, this court imposed a two-year suspension upon an attorney with prior discipline who neglected three legal matters, failed to communicate with his clients, and failed to return client property.

. It is unclear from the record if Mr. Heck actually received the $9,500 that respondent refunded. Respondent forwarded the funds to the ODC, who apparently returned the funds to respondent instead of forwarding same to Mr. Heck.

. In the past, we have declined to consider factors in mitigation when such factors are not sufficiently supported by the record. See, e.g., In re: Petal, 07-1299 (La. 1/25/08), 972 So.2d 1138; In re: Hansen, 04-1988 (La. 11/19/04), 888 So.2d 172; and In re: Welcome, 02-2662 (La. 1/24/03), 840 So.2d 519.