*974 ATTORNEY DISCIPLINARY PROCEEDINGS.
hPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Brenda W. Waltzer, an attorney licensed to practice law in Louisiana.
DISCIPLINARY PROCEEDINGS
The ODC filed three sets of formal charges against respondent. The first set of formal charges, consisting of a single count and bearing the disciplinary board’s docket number 02-DB-045, was filed on May 13, 2002. On June 17, 2002, the ODC filed the second set of formal charges, 02-DB-062, which also consisted of one count of misconduct. The first and second sets of formal charges were consolidated by order of the hearing committee chair dated August 6, 2002. On August 7, 2002, the ODC filed the third set of formal charges, consisting of two counts and bearing the disciplinary board’s docket number 02-DB-077. For some reason that is not explained in the record before us, the third set of formal charges was not consolidated with the other pending matters, and was considered by a separate hearing committee. On April 28, 2004, the disciplinary board filed in this court a single recommendation of discipline encompassing all matters involving respondent.
19The Joubert Matter (02-DB-045)
In 1990, Edith Joubert retained respondent to represent her in an employment discrimination claim against her former employer, Dixie Mill Supply Company, Inc. (“Dixie Mill”). In December 1990, respondent filed suit against Dixie Mill on behalf of Ms. Joubert. Edith Harvey Joubert v. Dixie Mill Supply Co., Inc., No. 90-24156 on the docket of the Orleans Parish Civil District Court. After the parties conducted discovery, including a deposition of Ms. Joubert in October 1996, the case was set for trial on February 24, 1997.
In late January 1997, Dixie Mill filed a motion for summary judgment. The trial court denied the motion on February 7, 1997. The proceedings were then stayed to allow Dixie Mill to seek review of the trial court’s judgment in the court of appeal. On February 26, 1997, respondent wrote a letter to Dixie Mill’s attorney, H. Mark Adams, in which she offered to settle Ms. Joubert’s case for $8,000. After the *975 court of appeal denied Dixie Mill’s application for supervisory writs on April 21, 1997, Dixie Mill authorized Mr. Adams to counter respondent’s proposal with a settlement offer of $5,000. Mr. Adams extended the offer to respondent in a telephone conversation on May 1, 1997, but thereafter he did not speak to her again until June 26, 1998, when respondent called to inquire about setting the case for trial. There has been no further activity of record in Ms. Joubert’s case, and the suit now appears abandoned.
In May 2001, Ms. Joubert filed a complaint against respondent with the ODC, alleging that she had been unable to contact respondent since her deposition. According to Ms. Joubert, both she and her daughter, Kathy Rushing, left numerous messages for respondent, but their calls were not returned. Respondent’s telephone number was eventually disconnected and her law office was closed. In 2000, Ms. Rushing was finally successful in reaching respondent, who indicated that Dixie Mill 1 shad offered to settle the Jou-bert case for $5,000. Ms. Rushing authorized respondent to accept the settlement offer on behalf of her mother; however, by that time, Dixie Mill’s offer was no longer available. Respondent has had no further communication with Ms. Joubert or Ms. Rushing.
Respondent failed to reply to Ms. Jou-bert’s complaint, necessitating the issuance of a subpoena compelling her to appear and answer the complaint under oath. In her sworn statement, respondent acknowledged receiving telephone calls from both Ms. Joubert and Ms. Rushing, and that she had been delinquent in returning the calls. Respondent also indicated that she would send Ms. Joubert a certified letter requesting further instructions concerning the continuation of the representation. Ms. Joubert denied ever receiving such a letter from respondent.
The ODC alleged that respondent’s conduct in the Joubert matter violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.16(d) (obligations upon termination of the representation), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with, the ODC in its investigation) of the Rules of Professional Conduct.
Respondent answered the formal charges and denied any misconduct. In particular, respondent asserted that Ms. Joubert’s case was not abandoned because on RMarch 2, 2000, she sent a discovery request to the defendant seeking copies of all documentary evidence that the defendant planned to use at trial.[1]
The Krilov Matter (02-DB-062)
In 1997, Alan Marc Krilov retained respondent to represent him in a personal injury matter. Respondent filed a petition for damages on behalf of Mr. Krilov on October 17, 1997. Alan M. Krilov v. Keith Davis, No. 97-57541 on the docket of the First City Court for the City of New Orleans. The petition specified that service of citation be withheld. On July 17, 1998, respondent requested that service of citation be effected. Defendant’s answer of September 17, 1998 was the last activity of record in the case, and the suit now appears abandoned.
*976 During the representation Mr. Krilov left numerous messages for respondent seeking information on the status of the case. Respondent failed to return the calls and also failed to reply to a certified letter from Mr. Krilov that she received on September 12, 2001.
In October 2001, Mr. Krilov filed a complaint against respondent with the ODC. Respondent failed to reply to the complaint, necessitating the issuance of a subpoena compelling her to appear on March 6, 2002 and answer the complaint under oath. Respondent failed to appear on that date.
In March 2002, the ODC received correspondence from respondent dated January 22, 2002 in which she suggested that she had previously answered Mr. Krilov’s complaint by letter to the ODC dated November 20, 2001. Respondent also supplied the ODC with a copy of a letter she purportedly sent to Mr. Krilov in which she advised him that she had undertaken discovery in his case and that the defendant | Bhad offered a settlement. Mr. Krilov denied ever receiving such a letter from respondent.
The ODC alleged that respondent’s conduct in the Krilov matter violated Rules 1.3, 1.4, 1.16(a) (failure to withdraw from the representation of a client upon being discharged), 1.16(d), 3.2 (failure to make reasonable efforts to expedite litigation), 3.3(a) (knowingly making a false statement of material fact to a tribunal), 3.4(c), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Respondent answered the formal charges and denied any misconduct. Respondent asserted that she made numerous attempts to contact Mr. Krilov during the representation and that she forwarded Mr. Krilov a settlement offer made by the defendant.
The Thomas Matter (02-DB-077)
In 1994, Gregory Thomas, Sr. retained respondent to represent him in an employment discrimination claim against his former employer. In December 1994, respondent filed suit on behalf of Mr. Thomas. Gregory Thomas v. Bridge Terminal Transport, Inc., et al., No. 94-19240 on the docket of the Orleans Parish Civil District Court. In December 1995, respondent filed an amended petition. In July 2001, after numerous unsuccessful attempts to contact respondent by phone and by leaving notes on the door of her law office, Mr. Thomas mailed a certified letter to respondent requesting his file so that he could seek new counsel. Respondent did not reply to Mr. Thomas’ request.
In August 2001, Mr. Thomas filed a complaint against respondent with the ODC. Respondent failed to reply to Mr. Thomas’ complaint, necessitating the issuance of a subpoena compelling her to appear and answer the complaint under oath. In her sworn statement, respondent testified that she had returned Mr. Thomas’ |fifile to him by certified mail. When the ODC received correspondence from Mr. Thomas disputing this assertion, respondent was asked to supply the ODC with documentation evidencing her return of the file. Respondent failed to do so. On March 28, 2002, respondent was personally served with a subpoena compelling her to appear before the ODC on April 10, 2002 and give a supplemental response to Mr. Thomas’ continuing complaint. Respondent failed to appear on that date. As of the filing of the formal charges, respondent has not surrendered Mr. Thomas’ file either to her client or to his new attorney, Jerald Album.
The ODC alleged that respondent’s conduct in the Thomas matter violated Rules 1.3, 1.4,1.7(b) (a lawyer shall not represent a client if the representation may be mate *977 rially limited by the lawyer’s own interests), 1.16(a), 1.16(d), 3.4(c), 8.1(a) (knowingly making a false statement of material fact in connection with a disciplinary matter), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct. Respondent answered the formal charges and denied any misconduct.

Recommendations of the Hearing Committees

The Joubert and Krilov Matters

As previously noted, the Joubert and Krilov matters were consolidated for purposes of a hearing on the merits, which was conducted by the hearing committee on September 4, 2002.
Respondent appeared at the hearing and testified in connection with the Joubert matter, as did Ms. Joubert, her daughter, Kathy Rushing, and attorney Mark Adams, who represented the defendant in Ms. Joubert’s case.
After considering the evidence and testimony presented, the committee made the following findings of fact in the Joubert matter:
|71. In 1990, Edith Harvey Joubert hired Respondent in an employment-related claim against Dixie Mill Supply Company, Inc.
2. In December 1990, Respondent filed suit on Ms. Joubert’s behalf, but withheld service on the defendant until July 1991. Thereafter the matter was set for trial on February 24,1997.
3. On October 11, 1996, counsel for Dixie Mill took Ms. Joubert’s deposition.
4. Dixie Mill’s Motion for Summary Judgment was denied on February 6, 1997, and the proceedings were stayed pending decision on the defendant’s application for supervisory writs. The writ application was denied on April 21,1997.
5. There has been no further activity of record in the proceeding, and the suit is now considered abandoned for failure to prosecute.
6. During the period of the representation, Respondent became inaccessible to Ms. Joubert, and failed to return numerous telephone calls from Ms. Joubert and her daughter Kathy Rushing.
7. Respondent also failed to return telephone calls from Ms. Rushing’s employer, Henry Leon Sarpy, who also attempted to make inquiries on behalf of Ms. Joubert.
8. At some point in the year 2000, Respondent advised Kathy Rushing that the defendant had offered $5,000 to settle the matter. Ms. Rushing instructed Respondent to accept the offer, as Ms. Joubert needed the money for medical expenses. Respondent had no further contact with Ms. Joubert or Ms. Rushing.
9. H. Mark Adams, counsel for Dixie Mill, received no response from Respondent to his client’s offer to settle the case for $5,000. The settlement offer is no longer available to Ms. Joubert.
|s10. Respondent’s telephone number was disconnected and her office was closed without notice to Ms. Joubert or Ms. Rushing.
11. On October 25, 2001, in a sworn statement before Disciplinary Counsel Respondent made false statements and misrepresentations as to her efforts on behalf of Ms. Joubert and the status of her case.
12. On June 5, 2001, Respondent was served with a copy of Ms. Joubert’s complaint by certified mail. She *978 failed to submit the requested response, and was thereafter personally served with an investigatory subpoena by which she was compelled to appear before Disciplinary Counsel and answer the complaint.
Based on these factual findings, the committee determined that the formal charges in the Joubert matter were proven by clear and convincing evidence and that respondent violated Rules 1.3, 1.4, 1.16(d), 3.4(c), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Turning to the Krilov matter, the ODC called Mr. Krilov and respondent as witnesses. Respondent also testified on her own behalf. After considering the evidence and testimony presented, the committee made the following findings of fact:
1. On October 15,1997, Alan Marc Kri-lov hired Respondent in a personal injury case.
2. On October 17, 1997, Respondent filed suit, but requested that service be held.
3. On July 17, 1998, Respondent released service on defendant, and an answer was filed September 17, 1998.
4. There is no further activity of record in the matter.
5. Respondent failed to return numerous telephone calls from Mr. Krilov, and refused to respond to certified mail from him.
|96. Respondent failed to withdraw from the representation after Mr. Krilov demanded his file back.
7.On November 29, 2001, Respondent was served with a copy of the complaint filed by Mr. Krilov. She failed to submit the requested response to the complaint.
8. On February 23, 2002, Respondent was personally served with an investigatory subpoena by which she was compelled to appear before Disciplinary Counsel to answer the complaint. Respondent failed to appear.
9. Thereafter, Respondent submitted correspondence to Disciplinary Counsel that falsely indicated that she had previously responded to the complaint and previously provided a status report to Mr. Krilov.
Based on these factual findings, the committee determined that the formal charges in the Krilov matter were proven by clear and convincing evidence and that respondent violated Rules 1.3, 1.4, 1.16(a), 1.16(d), 3.2, 3.3(a), 3.4(c), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
The committee found respondent violated duties owed to her clients, the legal system, and the profession. Respondent’s actions were negligent in part and intentional in part. Two clients were actually harmed by the abandonment of their cases. Additionally, Ms. Joubert lost a $5,000 settlement offer. Considering the ABA’s Standards for Imposing Lawyer Sanctions and relevant case law, the baseline sanction for respondent’s misconduct is a suspension from the practice of law.
The committee recognized the aggravating factors of prior disciplinary offenses,[2] dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply |inwith the rules or orders of the disciplinary agency, submission of false evidence, false statements, and other deceptive practices during the disciplinary process, substantial experience in the practice of law (admitted *979 1989), and indifference to rectifying the consequences of the misconduct. The committee recognized no mitigating factors.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for two years, with all but six months deferred. The committee further recommended that respondent be placed on supervised probation for a period of two years.
The ODC filed an objection to the hearing committee’s recommendation, asserting that a substantial period of deferment is unduly lenient under the facts and circumstances of this case.

The Thomas Matter

The hearing in the Thomas matter was originally set for December 3, 2002. The day before the hearing, respondent filed a motion seeking a continuance, citing an unspecified “medical condition” that she alleged prevented her from attending the hearing. The hearing committee chair denied the continuance absent any supporting evidence. Nevertheless, the hearing was in fact continued to January 21, 2003 due to the illness of the public member of the hearing committee. When the hearing was held on that date, the ODC called Mr. Gregory Thomas, Sr. and attorney Jerald Album to testify in person before the committee. Respondent did not attend the hearing.
After considering the evidence and testimony presented, the committee made a finding of fact that respondent neglected the legal matter entrusted to her by Mr. Thomas, refused or failed to release his file, and refused to cooperate in the disciplinary process. Based on these findings, the committee determined that Inrespondent violated Rules 1.3, 1.4 and 1.16(d) of the Rules of Professional Conduct. The committee did not address the violations of Rules 1.7(b), 1.16(a), 3.4(c), 8.1(a), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) alleged in the formal charges.
Considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction for respondent’s misconduct is a suspension from the practice of law. The committee recognized the aggravating factors of prior disciplinary offenses and bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency.[3] The committee made no finding concerning mitigating circumstances.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for two years.
Respondent filed an objection to the hearing committee’s recommendation, asserting that her motion for a continuance had been “arbitrarily denied,” and that after the hearing was continued for other reasons, she did not receive notice of the new hearing date.[4]

Disciplinary Board Recommendation

Following its consideration of all three sets of formal charges, the disciplinary *980 board adopted the factual findings of the hearing committee in the Joubert and Kri-lov matters, as well as its application of the Rules of Professional Conduct. However, the | aboard noted that additional findings of fact are necessary in the Thomas matter to address all of the alleged rule violations. Accordingly, the board made the following supplemental findings of fact:
1. Mr. Thomas hired Respondent in February 1994 to represent him in a suit for wrongful termination by his former employer on December 12,1993.
2. Respondent filed a petition for damages in 1994 and an amended petition in 1996 on Mr. Thomas’ behalf.
3. Mr. Thomas delivered original documents to Respondent including maintenance manuals, certificates of specialization, medical records, receipts, and income tax information for 2000.
4. Mr. Thomas spoke with Respondent by telephone approximately fifteen times from 1994 to 2000.
5. In 2000, Respondent told Mr. Thomas that she was in negotiations with the defendant to settle his case.
6. After Respondent told Mr. Thomas that settlement negotiations were pending, Mr. Thomas was no longer able to reach Respondent by telephone. Mr. Thomas went to Respondent’s office between fifteen and twenty times only to find the lights on but no one inside the office.
7. In early 2001, Mr. Thomas learned that Respondent’s telephone had been disconnected.
8. In 2001, Mr. Thomas, through his wife, attempted to engage another attorney, Jerald Album, to pursue his case.
9.Mr. Thomas sent a letter to Respondent, via certified mail, on August 3, 2001, requesting his file so that he may engage other counsel.
|1310. Respondent testified in her sworn statement to ODC that she sent Mr. Thomas’ original documents back to him by certified mail and that she did not receive the green certified mail return card back.
11. During Respondent’s November 13, 2001 sworn statement, she produced two letters dated “October 26, 2001” indicating to ODC that she had returned Mr. Thomas’ file to him.
12. During Respondent’s November 13, 2001 sworn statement, she produced a letter dated “July 30, 1998” which purports to be her transmittal letter of discovery requests and an offer to settle addressed to Bridge Terminal Transport, an alleged defendant in Mr. Thomas’ case.
13. Since 2000, Mr. Thomas has not heard from Respondent about his case nor has he received his file or personal property.
14. Mr. Album tried to contact Respondent by telephone and by mail to obtain Mr. Thomas’ file but he never received a response from Respondent.
15. On March 28, 2002, ODC personally served Respondent with a subpoena requiring her to appear before ODC with Mr. Thomas’ file.
16. On April 10, 2002, Respondent failed to appear before ODC pursuant to a subpoena to answer questions about Mr. Thomas’ file.
Based on these factual findings, the board determined that respondent violated the *981 Rules of Professional Conduct as charged in the third set of formal charges, with the exception of the alleged violation of Rule 1.7(b). The board concluded that the ODC did not establish respondent had a conflict of interest with Mr. Thomas, either directly or due to her representation of another client.
The board found respondent knowingly violated duties owed to her clients, the legal system, and as a professional. Respondent’s conduct caused years of delay in the cases she handled and harmed all three complainants. In Ms. Joubert’s case, | ^respondent’s misconduct caused the client to lose not only her day in court but also a $5,000 settlement. Respondent’s failure to cooperate with the ODC in its investigation and her submission of misleading responses to the ODC caused unnecessary depletion of the agency’s resources. The baseline sanction for such conduct is a suspension from the practice of law.
The board found the aggravating factors of prior disciplinary offenses, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, and substantial experience in the practice of law. The board found no mitigating factors are present.
Under these circumstances, and relying on the prior jurisprudence considering conduct similar to respondent’s, the board recommended that respondent be suspended from the practice of law for two years. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error | ^standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In the instant case, the factual findings of the hearing committees, as supplemented by the disciplinary board, are supported by the record and clearly demonstrate that respondent violated numerous provisions of the Rules of Professional Conduct. Among other misconduct, respondent neglected the legal matters of three clients, failed to communicate with her clients, and failed to properly terminate the representation of her clients. Respondent also failed to cooperate with the ODC in its investigation, failed to appear in response to subpoenas personally served on her, and gave false and misleading information to the ODC.
 Having found evidence of professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to *982 maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
A review of the record indicates that respondent’s misconduct was both knowing and intentional with regard to her failure to take any action in her clients’ cases, failure to communicate with her clients, and failure to cooperate with the ODC. Respondent has disregarded the professional responsibilities she owes to her clients, and she has expressed no remorse for her actions in jeopardizing her clients’ legal matters and delaying the resolution of their cases. Respondent’s chronic failure to hfiCooperate with the ODC has caused undue delays and burdened an already taxed disciplinary system. The baseline sanction for this misconduct is unquestionably a suspension from the practice of law.
In light of the numerous aggravating factors present in this case, in particular respondent’s prior disciplinary record for similar misconduct, pattern of misconduct, multiple offenses, and substantial experience in the practice of law, we conclude a lengthy suspension is appropriate. In similar cases involving multiple clients, we have imposed suspensions ranging from two to three years. See In re: Szuba, 01-1877 (La.10/5/01), 797 So.2d 41 (two-year suspension imposed for violations arising from four client complaints involving lack of diligence, failure to communicate, and failure to return property at the termination of representation); In re: Boudreau, 00-3158 (La.1/5/01), 776 So.2d 428 (three-year suspension imposed on an attorney who neglected three clients’ matters, failed to communicate with the clients, failed to account for and return unearned fees, failed to repay a student loan, withheld client property, and failed to cooperate with the ODC); and In re: Powers, 99-2069 (La.9/24/99), 744 So.2d 1275 (three-year suspension imposed on an attorney with a prior disciplinary record for similar misconduct who neglected three clients’ legal matters, failed to communicate with the clients, failed to account for and return unearned fees, and failed to cooperate with the ODC). The two-year suspension recommended by the disciplinary board herein is consistent with this jurisprudence. Accordingly, we will adopt the board’s recommendation and suspend respondent from the practice of law for a period of two years.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Brenda W. 117Waltzer, Louisiana Bar Roll number 19821, be suspended from the practice of law for a period of two years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Mr. Adams denied ever receiving such a discovery request from respondent.

. In 1998, respondent was admonished by the disciplinary board for neglecting a legal matter and failing to communicate with her client (98-AD B-043).

. The hearing committee also found “a concurrent disciplinary proceeding regarding similar factual circumstances” to be an aggravating factor, presumably referring to the Jou-bert and Krilov matters. However, as the disciplinary board correctly pointed out in its report, the disposition of those matters was not yet final and therefore they were not properly considered in aggravation.

. The record reflects that the disciplinary board administrator mailed a notice of the Januaiy 21, 2003 hearing to respondent at her home address on December 10, 2002. There is no indication that the notice was not received.