*848 11ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Edward Hebert, II, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.[1]
UNDERLYING FACTS
On April 4, 2003, Dantrell Bolling hired respondent to represent him in a personal injury matter. On March 29, 2004, respondent filed a lawsuit on behalf of Mr. Bolling. However, he withheld service of the lawsuit on the defendants, and none of the defendants were ever served. Respondent also provided Mr. Bolling with false information regarding settlement negotiations and a settlement offer.
In his May 12, 2005 written response to Mr. Bolling’s disciplinary complaint, respondent falsely stated that the lawsuit was proceeding to trial and Mr. Bolling was aware of the status of the lawsuit. In actuality, the lawsuit had not been served and was not proceeding to trial. On March 3, 2006, respondent gave a sworn statement to the ODC in which he falsely stated that he had engaged in settlement negotiations with Entergy, one of the defendants in the case, and that Entergy had made a settlement offer of approximately $5,400 in August 2005. In actuality, En-tergy had |2no record of Mr. Bolling’s claim or lawsuit and, thus, had made no settlement offer. Furthermore, there was no record of respondent having any contact with any Entergy representative.
During respondent’s sworn statement, he agreed to provide the ODC with the name of the Entergy representative with whom he claimed to have been negotiating. Respondent also agreed to provide the ODC with a copy of the proof of claim in Entergy’s bankruptcy that he planned to file. However, respondent failed to provide this information to the ODC or correct the misapprehension created by his false claims.
DISCIPLINARY PROCEEDINGS
In April 2007, the ODC filed three counts of formal charges against respondent, alleging that his conduct as set forth above violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 8.1(a) (a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter), 8.1(b) (a lawyer shall not knowingly fail to respond to a lawful de *849 mand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
Respondent initially failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). Thereafter, respondent filed an answer, stating that “the allegation against me is true, but only in | apart.” He described this matter as “a matter of an overlooked file” and indicated that he “knew nothing of this case except the client’s name” because it was his policy “to farm out personal injury cases” to another lawyer to handle. Finally, respondent stated his regret for the statements he made during his sworn statement but indicated that this occurred “after experiencing a loss of everything I owned including my home to Hurricane Katrina.”
The hearing committee chair then ordered that the matter proceed to a formal hearing on the merits. However, during a subsequent telephone conference, respondent waived his right to a full evidentiary hearing and requested a hearing in mitigation.

Healing Committee Report

After considering the testimony and evidence presented at the hearing in mitigation, the hearing committee made the following factual findings:
Respondent was retained by Mr. Bolling on or about April 4, 2003 to represent him in a personal injury matter, which stemmed from an automobile accident that occurred in Orleans Parish on March 31, 2003. Suit was filed on March 29, 2004, and respondent requested that service be withheld. Mr. Bolling had difficulty reaching respondent regarding the status of his claim and filed a complaint with the ODC. When respondent did communicate with Mr. Bolling, he knowingly provided his client with false information regarding settlement negotiations that never occurred.
Respondent submitted a written response and provided a sworn statement in response to Mr. Bolling’s complaint. In both, he represented that the case was progressing. In his sworn statement, respondent indicated that he had engaged in ^negotiations with Entergy, which culminated in an offer of $5,400 from Enter-gy. Respondent acknowledged that En-tergy never filed an answer to the lawsuit given that service was withheld. Even though the time period has elapsed for the suit to be considered abandoned, respondent attested that he continued to negotiate with Entergy. In fact, Entergy has no record of Mr. Bolling’s claim and has never engaged in negotiations with respondent. Mr. Bolling’s lawsuit was legally abandoned and subject to dismissal due to respondent’s failure to serve En-tergy, pursuant to the Louisiana Code of Civil Procedure. Eventually, Entergy sought bankruptcy protection. Respondent attested that he was preparing to file a proof of claim in Entergy’s bankruptcy proceeding but he had not done so as of the date of the hearing. Respondent also related problems with obtaining file materials following Hurricane Katrina. Although he promised the ODC that he would provide those materials, he failed to do so. Respondent’s initial written response to the ODC and subsequent sworn testimony contained numerous knowing and intentional misrepresentations.
Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. He negligently violat *850 ed a duty owed to his client. He knowingly and intentionally violated duties owed to the legal system and the legal profession. His conduct caused, at the very least, modest harm.
In aggravation, the committee found a dishonest or selfish motive, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, and submission of false evidence, false statements, or other deceptive practices during the disciplinary process. In mitigation, |sthe committee found the following factors: absence of a prior disciplinary record, personal or emotional problems,[2] and remorse.
Turning to the issue of an appropriate sanction, the committee considered In re: Waltzer, 04-1032 (La.10/8/04), 883 So.2d 973. In Waltzer, the attorney neglected three legal matters, failed to communicate with three clients, failed to properly terminate the representation of her clients, failed to appear in response to subpoenas from the ODC, and provided false and misleading information to the ODC. The attorney also had a prior disciplinary record. For this misconduct, Ms. Waltzer was suspended for two years.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for two years, with all but one year and one day deferred. The committee further recommended that respondent attend Ethics School and receive monthly monitoring during the deferred portion of the suspension.
The ODC filed an objection to the hearing committee’s recommendation, arguing that no portion of the suspension should be deferred.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s findings of fact are not manifestly erroneous. The board found that respondent violated the Rules of Professional Conduct as charged. The board adopted the committee’s findings regarding respondent’s mental state, the duties violated, the amount of harm caused by respondent’s conduct, and the aggravating and mitigating factors present. However, the board declined to place extra emphasis on the [ ^mitigating factor of personal or emotional problems, as the committee did, because much of respondent’s misconduct occurred before Hurricane Katrina. Thus, the board determined that the aggravating and mitigating factors balance out. Based on the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is suspension.
Citing Waltzer, supra, the board recommended that respondent be suspended for two years and be ordered to attend Ethics School.
Although neither respondent nor the ODC filed an objection to the board’s recommendation, on April 22, 2009, this court ordered briefing addressing the issue of an appropriate sanction. Both respondent and the ODC filed briefs in response to the court’s order.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this *851 court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the hearing committee’s factual findings that respondent neglected Mr. Bolling’s legal matter, failed to communicate with his client, made false statements of material fact to his client and the ODC, and failed to cooperate |7with the ODC in its investigation. He violated the Rules of Professional Conduct as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
From the record, it appears that respondent’s conduct was negligent and intentional. He violated duties owed to his client, the legal system, and the legal profession. The aggravating and mitigating factors found by the hearing committee are supported by the record.
We recently suspended a lawyer for one year and one day for knowingly making false statements of material fact during a disciplinary investigation. In re: Parks, 08-3006 (La.4/24/09), 9 So.3d 106. We find a similar sanction is appropriate in the instant case. Accordingly, we will impose a one year and one day suspension, which will necessitate an application for reinstatement.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Edward Hebert, II, Louisiana Bar Roll number 25086, be and he | shereby is suspended from the practice of law for a period of one year and one day. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
VICTORY, J., dissents and would impose greater sanction.
VICTORY, J.,
dissents.
Ill would impose a two-year suspension as recommended by the disciplinary board.

. Respondent has been ineligible to practice law in Louisiana since July 27, 2006 for failure to comply with the mandatory continuing legal education requirements. He is also ineligible for failure to pay his bar dues and the disciplinary assessment.

. Respondent suffered the loss of his physical property and his residence as a result of Hurricane Katrina. He was uninsured and received no recovery funds. Since then, he has been homeless at times and has survived on temporary, non-legal work such as picking up trash. He also has undergone therapy for depression. Furthermore, he has been taking care of his minor child by himself since 2003 after the child's mother was accused of child abuse.