*840
 
 | ATTORNEY DISCIPLINARY PROCEEDINGS
 

 
 *841
 
 PER CURIAM.
 
 *
 

 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Kenner 0. Miller, Jr., an attorney licensed to practice law in Louisiana.
 

 During the disciplinary proceedings, respondent presented evidence suggesting his misconduct was caused by his alcoholism and cocaine abuse, for which he has been seeking treatment. To that end, on March 24, 2008, respondent entered into a five-year contract with the Lawyers Assistance Program (“LAP”). The ODC subsequently received information from LAP that respondent’s January 27, 2009 drug test was positive for cocaine. Accordingly, the ODC filed a petition requesting the court place respondent on immediate interim suspension for threat of harm to the public. The court granted the petition on February 11, 2009.
 
 In re: Miller,
 
 09-0271 (La.2/11/09), 2 So.3d 418.
 

 UNDERLYING FACTS
 

 The underlying facts of this matter are not in dispute, having been stipulated to by the parties.
 

 _¡2Count I
 
 — The
 
 Boyd Matter
 

 In December 2000, Baton Rouge attorney Drew Louviere asked respondent to be lead counsel in the representation of Allen Boyd, who was involved in two car accidents, one in Georgia and one in Louisiana.
 
 [1]
 
 The Georgia car accident occurred on February 22, 2000 and was subject to a two-year prescription period.
 

 Respondent agreed to associate a Georgia attorney as local counsel for the Georgia case but failed to do so, despite corresponding with a Georgia attorney in January, June, and October 2001. On January 3, 2002 and February 11, 2002, Mr. Louviere contacted respondent to find out if he had obtained a Georgia attorney and to remind him of the approaching prescription date. On February 12, 2002, respondent informed Mr. Louviere that “I’ve got the Ga. matter taken care of. Don’t worry.”
 

 Respondent prepared a lawsuit as a pro se filing and affixed to it a signature purporting to be Mr. Boyd’s without having Mr. Boyd’s power of attorney or other proper legal written authority to sign his name. On February 21, 2002, respondent foiwarded the lawsuit to the clerk of court for Cobb County (Georgia) Superior Court, and the clerk of court’s office filed it on February 22, 2002. Respondent did not inform the Cobb County Superior Court that the signature on the lawsuit was not Mr. Boyd’s.
 

 Respondent also failed to submit forms necessary to have the lawsuit assigned to a judge and served. The clerk’s office returned to respondent a date-stamped copy of the lawsuit and the required forms. Respondent did not return the required forms. Accordingly, the lawsuit was not assigned to a judge or timely served.
 

 | sIn April 2003, February 2004, and July 2004, Mr. Louviere asked respondent about the settlement status of Mr. Boyd’s Georgia case. In July 2004, respondent’s office informed Mr. Louviere that respondent was preparing a settlement package in Mr. Boyd’s case. In September 2004, respondent still had not submitted the settlement package, and Mr. Louviere demanded he return Mr. Boyd’s file. Re
 
 *842
 
 spondent returned' the file to Mr. Louviere on September 10, 2004.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 3.3 (candor toward the tribunal), 4.1 (truthfulness in statements to others), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent stipulated that he violated Rules 1.3, 1.4, 8.4(c), and 8.4(d).
 

 Count II
 
 — The
 
 Heath Matter
 

 In July 2001, Amy Heath retained respondent to handle a medical malpractice claim. In August 2001, respondent requested the appointment of a medical review panel.
 

 In attempting to locate an expert witness to support the malpractice claim, respondent spoke briefly to one other attorney and spoke to only one physician, who reviewed only .part of the medical records. In June 2003, the medical review panel rendered an opinion adverse to Ms. Heath’s claim. Respondent sent Ms. Heath a copy of the opinion on July 11, 2003.
 

 |4In September 2003, respondent filed a petition for damages on Ms. Heath’s behalf with the Fourth Judicial District Court for the Parish of Ouachita. Thereafter, respondent failed to respond to the defendants’ discovery requests. Motions for summary judgment on behalf of most of the defendants were granted in open court on April 5, 2005.
 
 [2]
 
 The related judgment was signed on April 19, 2005. A joint motion dismissing the remaining defendant,
 
 [3]
 
 which respondent signed, was granted on July 24, 2006.
 

 In May 2005, respondent mailed a copy of the April 2005 judgment to Ms. Heath and informed her he was unable to find a doctor to testify that malpractice occurred. Ms. Heath requested her file, but respondent did not send it to her until October 2006, more than one year after summary judgment was granted and after she filed a disciplinary complaint against him. Although respondent was in contact with Ms. Heath during the litigation, he failed to properly and accurately advise her of the status of the case.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d) (obligations upon termination of the representation), and 8.4(c).
 
 [4]
 
 Respondent stipulated that he violated the Rules of Professional Conduct as alleged.
 

 |
 
 bCount III
 
 — The
 
 Hampton Matter
 

 Respondent has never been admitted to the practice of law in Texas. Nonetheless,
 
 *843
 
 on March 31, 2004, Linda Hampton hired respondent to represent her in a personal injury matter, based on a slip and fall incident that occurred on July 19, 2003 in Harris County, Texas. The prescription date was July 19, 2005.
 

 Between May 13, 2005 and June 10, 2005, respondent corresponded with two Texas attorneys about undertaking Ms. Hampton’s representation. However, neither wished to do so because of a perceived lack of merit. Between March 31, 2004 and July 19, 2005, respondent did not send a settlement demand or otherwise correspond with the apparent defendants in Ms. Hampton’s case.
 

 Furthermore, although Ms. Hampton’s accident occurred on July 19, 2003, respondent prepared a petition for damages that inaccurately listed the accident date as August 19, 2003. Respondent signed the petition, stating he had been admitted pro hac vice when he did not submit a motion for pro hac vice admission in the case. On August 19, 2005, respondent fax-filed the petition with the district court in Harris County, Texas. Accordingly, respondent did not timely file the petition on Ms. Hampton’s behalf.
 

 During the representation, respondent communicated with Ms. Hampton. However, he failed to keep her properly and accurately advised of the status of the case. He failed to inform her that he had not timely filed the lawsuit on her behalf, had not been admitted pro hac vice in her case, and had not submitted a motion for pro hac vice admission.
 

 On June 30, 2006, another lawyer contacted respondent on Ms. Hampton’s behalf after Ms. Hampton complained to him that respondent would not meet with or speak to her. Despite Ms. Hampton’s requests for her file, respondent did not send |fia copy of her file to her until December 2006, more than one year after the lawsuit was filed and after she filed a disciplinary complaint against him.
 

 The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d), 3.3(a)(1) (a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer), 5.5(a) (engaging in the unauthorized practice of law), 8.4(c), and 8.4(d).
 
 [5]
 
 Respondent stipulated that he violated the Rules of Professional Conduct as alleged.
 

 DISCIPLINARY PROCEEDINGS
 

 In September 2007, the ODC filed three counts of formal charges against respondent. In December 2007, respondent answered the formal charges, admitting some alleged misconduct and denying other alleged misconduct. He also indicated he had been undergoing intensive substance abuse treatment through the Tau Center.
 
 [6]
 

 Formal Hearing
 

 This matter proceeded to a hearing in mitigation conducted by the hearing committee in July 2008. Respondent introduced the following exhibits: 1) January 26, 2009 video deposition of Paula Norris, a substance abuse counselor, 2) January 28,
 
 *844
 
 2009 video deposition of Steven Adams, respondent’s LAP monitor, 3) respondent’s January 28, 2009 video deposition, 4) respondent’s February 6, 2009 ^supplemental video deposition, and 5) the parties’ second joint stipulation and agreement.
 

 In respondent’s initial deposition on January 28, 2009, he admitted he is an alcoholic and a drug addict. However, he denied using alcohol or cocaine since October 2007, and he indicated he has been randomly drug tested through the LAP program. On February 6, 2009, respondent gave a supplemental deposition, wherein he admitted to using cocaine on January 26, 2009, which was detected during his January 27, 2009 random drug test.
 
 [7]
 
 He admitted he lied about being drug free during his initial deposition on January 28, 2009. However, he indicated his use of cocaine on January 26, 2009 was an isolated incident.
 

 Hearing Committee Report
 

 After considering the evidence and testimony presented in this matter, the hearing committee determined the parties entered a detailed stipulation, which establishes the factual findings. Based on these stipulated facts, the committee found respondent repeatedly failed to provide his clients with diligent representation and repeatedly provided them with inaccurate or incomplete information. The committee further found respondent knowingly deceived his client and the Georgia court by signing Mr. Boyd’s name to the lawsuit without Mr. Boyd’s authorization. The committee also found respondent knowingly deceived the Texas court by post-dating Ms. Hampton’s accident date and misrepresenting his pro hac vice status. Based on these findings, the committee accepted the parties’ stipulation regarding rule violations.
 

 IsThe committee further determined respondent caused injury or potential injury to his clients, and he knowingly engaged in deceitful conduct. Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 as well as this court’s prior jurisprudence involving similar misconduct, the committee determined the baseline sanction is suspension.
 

 In aggravation, the committee found multiple offenses and substantial experience in the practice of law (admitted 1983). The committee also found the following mitigating factors present: absence of a prior disciplinary record, absence of a dishonest or selfish motive, timely good faith effort to rectify the consequences of the misconduct, cooperative attitude toward the proceedings, mental disability or chemical dependency including alcoholism or drug abuse, and remorse.
 

 After considering this court’s prior jurisprudence, the committee recommended respondent be suspended from the practice of law for three years, fully deferred, subject to his compliance with his March 24, 2008 LAP contract.
 

 The ODC filed an objection to the hearing committee’s recommendation, arguing that no portion of the three-year suspension should be deferred because respondent cannot establish compliance with his LAP contract and cannot establish that he has been drug free during his interim suspension. In the ODC’s subsequent brief to the disciplinary board, it presented two letters from William Leary, LAP’S execu
 
 *845
 
 tive director. The first letter, dated April 30, 2009, indicated respondent had not submitted sobriety reports or attendance sheets for the past quarter and had not taken a drug test since February 2009. The second letter, dated September 10, 2009, indicated respondent’s continued non-compliance with his LAP contract, as he had still not contacted LAP. Under these circumstances, the ODC submitted that mental disability or chemical dependency should not be considered as a mitigating factor. InThe ODC further argued the additional aggravating factor of submission of false evidence, false statements, or other deceptive practices during the disciplinary process is present because respondent intentionally perjured himself during his January 28, 2009 deposition.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board, like the hearing committee, accepted the stipulations as factual findings. Based on these findings, the board determined respondent violated the Rules of Professional Conduct as follows:
 

 The Boyd matter — Respondent violated Rules 1.3, 1.4, and 8.4(c) by neglecting Mr. Boyd’s legal matter and failing to properly and accurately communicate with Mr. Boyd. Respondent’s signing Mr. Boyd’s name to the pro se lawsuit and failing to inform the Georgia court of same does not rise to the level necessary to establish a violation of the Rules of Professional Conduct. Accordingly, the board determined respondent did not violate Rules 3.3, 4.1, 8.4(b), 8.4(c), and 8.4(d) with respect to respondent signing Mr. Boyd’s name on the lawsuit.
 

 The Heath matter — Respondent violated Rules 1.3, 1.4, and 8.4(c) by neglecting Ms. Heath’s legal matter and failing to properly and accurately communicate with her. Respondent violated Rule 1.16(d) by failing to promptly return Ms. Heath’s file. The board did not find violations of Rules 1.16 and 3.1.
 

 The Hampton matter — Respondent violated Rules 1.3, 1.4, and 8.4(c) by neglecting Ms. Hampton’s legal matter and failing to properly and accurately communicate with her. Respondent violated Rule 1.16(d) by failing to promptly return Ms. Hampton’s file. Respondent violated Rules 3.3(a)(1), 5.5(a), 8.4(c), and 8.4(d) by filing a lawsuit containing inaccurate material information and falsely | ^representing to another state’s court that he had been admitted pro hac vice. The board did not find violations of Rules 1.16 and 3.1.
 

 The board further determined respondent violated duties owed to his clients, the legal system, and the legal profession. He acted knowingly and caused harm to his clients. After considering the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined the baseline sanction is suspension.
 

 The board found the following aggravating factors present: a pattern of misconduct, multiple offenses, submission of false statements during the disciplinary process, and substantial experience in the practice of law. In mitigation, the board found timely good faith effort to rectify the consequences of the misconduct (in the Boyd matter only) and remorse. The board rejected the mitigating factor of mental disability or chemical dependency due to respondent’s use of cocaine just prior to his January 28, 2009 deposition and his abandonment of the LAP program, both of which indicate he has not successfully recovered and recurrence of his misconduct is likely.
 

 Based on this court’s prior jurisprudence involving similar misconduct, the ABA Standards, and the facts of this case, the board recommended respondent be
 
 *846
 
 suspended from the practice of law for eighteen months.
 

 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Banks,
 
 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings.
 
 See In re: Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 The record of this matter supports the stipulated facts. Based on the parties’ stipulations and the other evidence in the record, respondent has neglected three legal matters, failed to properly and accurately communicate with three clients, failed to promptly return two client files, signed a client’s name to a pro se lawsuit without the client’s written authorization, failed to properly indicate to a court that he signed his client’s name to a pro se lawsuit, filed a lawsuit containing inaccurate material information, and falsely represented to another state’s court that he had been admitted pro hac vice. Based on this misconduct, respondent has violated Rules 1.3, 1.4, 1.16(d), 3.3(a)(1), 5.5(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct, as stipulated to by the parties.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 | ^Respondent knowingly violated duties owed to his clients, the legal system, and the legal profession. His actions caused actual harm to his clients and the legal system. The baseline sanction for this type of misconduct is a period of suspension.
 

 The record supports the following aggravating factors: a pattern of misconduct, multiple offenses, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, and substantial experience in the practice of law. Mitigating factors present are the absence of a prior disciplinary record, absence of a dishonest or selfish motive, personal or emotional problems,
 
 [8]
 
 a cooperative attitude toward the proceedings, and remorse.
 

 
 *847
 
 Prior jurisprudence indicates the appropriate sanction for similar misconduct is a suspension from the practice of law for one year and one day to two years. For example, in
 
 In re: Hebert,
 
 08-2785 (La.5/29/09), 9 So.3d 846, we suspended an attorney for one year and one day after the attorney neglected a legal matter, failed to communicate with his client, made false statements of material fact to his client and the ODC, and failed to cooperate with the ODC in its investigation. In
 
 In re: Bailey,
 
 03-0839 (La.6/6/03), 848 So.2d 530, we suspended an attorney for two years after the attorney knowingly made false statements to a trial court and knowingly submitted altered evidence at a trial. Finally, in
 
 In re: Waltzer,
 
 04-1032 (La.10/8/04), 883 So.2d 973, we suspended an attorney for two years after the attorney neglected three legal matters, failed to communicate with three clients, failed to properly terminate the representation of her clients, failed to cooperate with the ODC in its investigations, failed to appear in response to subpoenas personally served on her, and gave false and misleading information to the ODC.
 

 |1sIn light of the mitigating factors present, we find the eighteen-month suspension recommended by the disciplinary board is reasonable as it will require respondent to file an application for reinstatement before being allowed to return to the practice of law. Accordingly, we will adopt the board’s recommendation and suspend respond from the practice of law for eighteen months, retroactive to the date of his interim suspension.
 
 [9]
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Kenner O. Miller, Jr., Louisiana Bar Roll number 1963, be and he hereby is suspended from the practice of law for eighteen months, retroactive to February 11, 2009, the date of his interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 . The Louisiana accident occurred in the summer of 2000, and respondent settled the case for a significant sum of money. Accordingly, respondent’s conduct in the Louisiana case is not at issue in the instant disciplinary proceedings.
 

 [2]
 

 . Respondent did not file oppositions to the motions for summary judgment because he could not find an expert to establish that malpractice had occurred.
 

 [3]
 

 . Due to a clerical error, the remaining defendant was not properly included in the original medical review panel case or the original petition for damages. Respondent agreed to dismiss the lawsuit against the remaining defendant in light of the summary judgment in favor of the other defendants and because the claim against the remaining defendant had prescribed.
 

 [4]
 

 .In the alternative, the ODC alleged respondent violated Rules 1.4, 1.16 (declining or terminating representation), and 3.1 (meritorious claims and contentions) only if he believed Ms. Heath’s cause of action was not viable but failed to properly advise her of his belief and withdraw from the representation.
 

 [5]
 

 . In the alternative, the ODC alleged respondent violated Rules 1.4, 1.16, and 3.1 only if he believed Ms. Hampton’s cause of action was not viable but still failed to properly advise her of his belief and withdraw from the representation.
 

 [6]
 

 . According to his counselor at the Tau Center, respondent attended the Chemical Dependency Intensive Outpatient Program from October 15, 2007 to December 6, 2007. In March 2008, after successfully completing the program, he began attending the Continuing Care Program’s weekly meetings.
 

 [7]
 

 . The parties' second joint stipulation and agreement, dated February 13, 2009, states: "[Respondent] has freely admitted his use of the prohibited substance detected in the screen and has not attempted to hide his failure in this regard. He continues to cooperate with both LAP and his Bar Monitor, Steve Adams. Nonetheless, he is currently in violation of his LAP Contract in light of this positive drug screen."
 

 [8]
 

 . While we acknowledge respondent's alcoholism and drug abuse caused the misconduct, he has been unable to demonstrate a meaningful and sustained period of successful rehabilitation. As the record reflects, respondent used cocaine in January 2009 and has not participated in LAP since February 2009. Therefore, the more heavily weighted mitigating factor of mental disability or chemical dependency is not present.
 

 [9]
 

 . In a footnote, the disciplinary board suggested we may wish not to exercise our discretion to apply the suspension retroactively to the date of respondent’s interim suspension. However, we have historically chosen to exercise our discretion in order to make suspensions run retroactive to the date of prior interim suspensions.
 
 See, e.g., In re: La-cobee,
 
 03-2010 (La.2/20/04), 866 So.2d 237;
 
 In re: Gaudin,
 
 00-2966 (La.5/4/01), 785 So.2d 763;
 
 In re: Ferrouillet,
 
 99-3434 (La.6/30/00), 764 So.2d 948;
 
 In re: Edwards,
 
 99-1783 (La.12/17/99), 752 So.2d 801;
 
 In re: Sterling,
 
 08-2399 (La.1/30/09), 2 So.3d 408.