WEIMER, J.,
dissenting.
| ¶Although I have immense respect for the dedication of everyone who volunteers and works within the attorney disciplinary system, I respectfully dissent from the sanction of disbarment. While there is no excuse for the respondent’s misconduct, the record nevertheless establishes that this case could have been, and should have been, resolved by consent discipline with a three-year suspension. According to the Office of Disciplinary Counsel (ODC), the respondent “has always professed a desire to resolve these matters through a three year suspension.” Instead, this matter has consumed the resources of the disciplinary and judicial system for years, all for a very similar outcome.
Three procedural aspects of this record, from an early stage, pointed to a consent resolution. First, the respondent jointly petitioned for an interim suspension in April 2009. Second, the respondent stipulated to his misconduct. Third, the only factual issues for the disciplinary system’s evaluation at that point were the respondent’s case in mitigation.
Given this procedural posture, the ODC’s prosecutorial role shifted. Respondent’s stipulations relieved ODC of the burden of proving misconduct and the knowing and intentional aspects of the misconduct. The ODC then stood as a challenger to aspects of the respondent’s case in mitigation.
1 ^However, certain mitigating aspects were already firmly established. Indeed, ODC stipulated to respondent’s cooperation with the disciplinary system and to his remorse. Furthermore, the record shows that respondent’s debilitating back injuries, including partial severance of his spinal cord, and his obvious mobility impairments, aligned with the time frame of his misconduct.
The misconduct the ODC emphasizes most to this court is the respondent’s conversion of $5,000. The respondent had set aside that sum from a settlement in the Cuddihy matter to pay a health insurer’s subrogation claim. Although the health insurer later fully waived the subrogation claim, the respondent did not promptly release the $5,000 to his former client.[1]
Any conversion of client funds is ultimately inexcusable, requiring the disciplinary system (with most cases advancing to this court), to decide upon a sanction. However, the facts of this conversion hardly line up with the factors for imposing the sanction of disbarment for conversion as described in Louisiana State Bar Ass’n v. *808 Hinrichs, 486 So.2d 116 (La.1986). Notably, in distinguishing when disbarment is appropriate from when a three-year suspension is appropriate, this court previously explained: “in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm.” Id. at 123. From the facts presented, Ms. Cuddihy had no expectation that she would receive the $5,000. Her expectation was just the opposite, ie., that her health insurer would claim reimbursement for most, if not all, of what the health insurer had paid in treatment for her personal injury. The health insurer’s waiver of its reimbursement claim was an unexpected bonus.
| oAccording to the ODC, until respondent made restitution, Ms. Cuddihy experienced an “inconvenience” at being deprived of the funds that she likely never expected her health insurer would release. The situation the ODC describes stands in sharp contrast to the situation in Hinnchs, where we found a three-year suspension would have been appropriate for the following injury to. a client: “The client was seriously injured in his day-to-day living and in his dealings with creditors. Hin-richs fully repaid his client, with damages, but only after several months had elapsed, a civil suit had been filed, a complaint lodged with the bar association, and a complaint made to the district attorney’s office.” Id.
Not only do the standards this court has previously announced call for imposing a three-year suspension here, but returning to the procedural posture of this case, practical timing considerations also underscore the appropriateness of seeking a three year-suspension. At present, the respondent has been on interim suspension for over four years. With the disbarment the majority imposes, the respondent will be eligible to petition for readmission after five years have elapsed from his interim suspension. Sup.Ct. Rule XIX, § 24(A). Sanctioning respondent with a three-year suspension would have resulted in the suspension running retroactive from the date of interim suspension. See In re Miller, 2009-2680, p. 13 (La.5/21/10), 34 So.3d 839, 847 n. 9. But effectively, because over four years have elapsed from his interim suspension, if given a three-year suspension, the respondent would have served a longer period of suspension from the practice of law before he could petition for reinstatement than the period formally called for in such a sanction.
Given the unique facts of the conversion in this case, which are far different from those described as meriting disbarment in Hinrichs, and given that the mitigating factors of profound physical disability, cooperation, and remorse were well 14established, the three-year consent discipline should have been submitted to this court. Instead, even under the disbarment sanction the majority imposes today, the respondent is only about six months away from the time at which he is eligible to petition for readmission. Thus, the resources of the disciplinary system, including this court, have all been pressed into full service to yield an additional sanction of six months.

. As the majority points out, although tardily made, respondent did make full restitution, with interest, to his former client.